RECEIVED
SEP 11 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TYLER RENWICK | * | CIVIL ACTION NO. 2:15-CV-02316 |
| v. | * | JUDGE JAMES T. TRIMBLE, JR. |
| PNK (LAKE CHARLES) LLC | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a motion for new trial or, in the alternative, to alter or amend judgment, filed by the plaintiff, Tyler Renwick ("Renwick"), seeking a new trial on the issues presented in the defendant's motion for summary judgment. (Rec. Doc. 51). The defendant, PNK (Lake Charles) LLC ("PNK"), filed a response in opposition to the motion (Rec. Doc. 58), and Renwick filed a reply in further support. (Rec. Doc. 61). For the reasons stated below, the court will **DENY** Plaintiff's motion for a new trial.

## PROCEDURAL HISTORY

This matter was set for trial on April 24, 2017, in Lake Charles, LA before Judge Minaldi.[1] On January 23, 2017, PNK filed a motion for summary judgment seeking judgment in its favor and the dismissal of all of Renwick's claims against it.[2] Renwick filed a memorandum in opposition to PNK's motion for summary judgment on February 8, 2017.[3] On February 24, 2017, PNK filed a reply in further support of its motion for summary judgment.[4] The case was reassigned

---

[1] Rec. Doc. 23.
[2] Rec. Doc. 30.
[3] Rec. Doc. 32.
[4] Rec. Doc. 37.

1

to Judge Trimble on March 10, 2017.[5] On April 3, 2017, the court issued a Judgment granting the motion for summary judgment filed by PNK and dismissing Renwick's claims with prejudice.[6] The court issued a Memorandum Ruling explaining its reasons for finding that PNK did not owe a duty to Renwick under Louisiana law.[7] On April 24, 2017, Renwick filed the instant motion for new trial, or, in the alternative, to alter or amend the judgment, alleging that the Judgment was based on manifest errors of law or fact, and that the Judgment should be reconsidered to prevent manifest injustice.[8]

## LAW AND ANALYSIS

### A. Legal Standard

Within twenty-eight days after the entry of judgment, a party may file a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). "A Rule 59(e) motion 'calls into question the correctness of a judgment.'"[9] "A motion to alter or amend judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"[10] A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[11] "Reconsideration of a judgment after its entry is an extraordinary remedy that should

---

[5] Rec. Doc. 42.
[6] Rec. Doc. 50.
[7] Rec. Doc. 49.
[8] Rec. Doc. 51-2, p. 2.
[9] *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).
[10] *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d, 854, 863-64 (5th Cir. 2003)) (other citations and quotation marks omitted).
[11] *Templet*, 367 F.3d at 478-79 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

be used sparingly."¹² "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."¹³

**B. Analysis**

The plaintiff argues that the court erred for four main reasons: (1) "[t]he [c]ourt failed to consider critical evidence in the record which is pertinent to the issues raised by defendant in its motion for summary judgment;" (2) "[t]he [c]ourt reached conclusions concerning questions of fact that are material to the issues at hand and which questions are legitimately disputed;" (3) "[t]he [c]ourt failed to interpret the evidence in the light most favorable to the nonmoving party, i.e., the plaintiff, and had that been done, material issues of fact would have been paramount;" and (4) the court erred under a strict liability analysis.¹⁴

*A. Did the Court Fail to Consider Critical Evidence in the Record?*

Renwick contends: (1) that the record was too substantial for either counsel to address in full detail in their briefs; (2) that the court undertook a comparative negligence analysis instead of a duty analysis when addressing his negligence claims; and (3) that the court intertwined elements of negligence and strict liability in its analysis.¹⁵ Under the first issue, Renwick does not cite evidence in the record that he claims the court failed to consider.¹⁶ Under the second issue, Renwick misinterprets the court's analysis in its Memorandum Ruling to be one of determining the allocation of negligence which requires a finding that the defendant was negligent.¹⁷ On the

---

¹² *Id.* at 479 (citing *Clancy v. Emp'rs Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D. La. 2000) (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice & Procedure § 2810.1, at 124 (2d ed. 1995)).

¹³ *Id.* (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)).

¹⁴ Rec. Doc. 52-1, pp. i, 12.

¹⁵ Rec. Doc. 52-1, pp. 2-3.

¹⁶ Rec. Doc. 52-1, pp. 2-3.

¹⁷ *See* Rec. Doc. 52-1, pp. 2-3 (citing *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La. 1988).

3

contrary, the court found that PNK did not owe a duty to Renwick, thus, there could be no analysis of comparative negligence.[18] Under the third issue, Renwick does not provide citation to the Memorandum Ruling to identify the alleged errors.[19]

The court notes that Renwick raises the issue that the case was reassigned "on the eve of trial" which may have given the court an "inadequate amount of time to fully explore all of the myriad factual matters raised by the motion for summary judgment" and without "any oral argument to explain the nuances of the arguments and facts."[20] However, under Federal Rule of Civil Procedure 56(c)(3), the court need only consider the cited materials when considering a motion for summary judgment. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[21] "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."[22]

The court also notes that all of the briefing for the motion for summary judgment was completed before the case was reassigned and in accordance with the scheduling order set by the court and the local rules. Thus, the date of reassignment did not affect the parties' deadlines to present their arguments. Finally, the court notes that Renwick did not request or file a motion for oral argument on the motion for summary judgment "to explain the nuances of the arguments and facts."

---

[18] *See* Rec. Doc. 49, pp. 19, 23, 24.

[19] *See* Rec. Doc. 52-1, p. 3.

[20] Rec. Doc. 51-2, p. 1.

[21] *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)) (other citations omitted).

[22] *Id.* (citing *Ragas*, 136 F.3d at 458) (other citations omitted).

Based on these arguments, Renwick has not established that the judgment was based on manifest errors of law or fact by failing to consider critical evidence in the record.

### B. Did the Court Reach Conclusions Concerning Disputed Material Facts?

Renwick contends that the court made eight errors of fact.[23] The court will address them one-by-one. First, Renwick contends that the court made a factual determination that PNK made a non-binding recommendation to its independent contractor, and Renwick's employer, PB Technology, LLC ("PB"), to access the rooftop vents via a ladder from the roof of the casino vessel.[24] Renwick argues that this was error because that method of accessing the vents was the only one provided to PB.[25] Renwick misinterprets the court's statement. The court was discussing the use of a particular ladder to access the vents, rather than the general manner of access, in its analysis of whether PNK had operational control over PB's work.[26]

Second, Renwick claims the court did not give proper consideration as to who owned, provided, or secured the ladder for PB employees to use, "commingling" this evidence with "employer fault."[27] Renwick does not specify any particular portion of the Memorandum Ruling in support of this argument nor make any further explanation. The court assumes, based on the reference to "employer fault," that Renwick is referencing the court's analysis of "operational control." In its Memorandum Ruling, the court considered evidence relating to who provided the ladder for PB's use at PNK's L'Auberge property under its analysis of whether PNK had operational control over PB's work.[28] As the court stated in its Memorandum Ruling:

---

[23] Rec. Doc. 51-2, pp. 3-8.
[24] *Id.*
[25] Rec. Doc. 51-2, p. 3 ("a").
[26] *See* Rec. Doc. 49, p. 10.
[27] Rec. Doc. 51-2, pp. 3-4 ("b").
[28] *See* Rec. Doc. 49, pp. 9-14.

5

> None of the evidence cited by either party shows that there were discussions between PNK and PB about providing a ladder or that PNK knew of any ladders on the roof other than the wooden ladder identified by a L'Auberge employee in 2007, which was removed within a few months after the initial walkthrough with PB and JC Myers.[29]

This, among other considerations, led the court to conclude that "PB was free to conduct the work in its own way and does not put PNK in operational control."[30] The court further notes that, in support of his argument, Renwick cites evidence that he did not cite in his opposition to PNK's motion for summary judgment.[31] However, under Federal Rule of Civil Procedure 56(c)(3), the court need only consider the cited materials when considering a motion for summary judgment.

Third, Renwick contends that the court improperly gave weight to testimony provided by the general contractor, JC Myers, because he had no involvement with the "actual work" that PB did over the course of eight years.[32] The court first notes that it is not the judge's function to weigh the evidence at the summary judgment stage.[33] Further, the testimony that Renwick cites does not provide support for this assertion, particularly the testimony of JC Myers who stated: "I've had health problems for the last two years so I used to go out there with them every once in a while, you know, to make sure they're doing okay and stuff like that."[34] Finally, the court, again, notes that Renwick did not cite this testimony or make this argument in his memorandum in opposition to the motion for summary judgment.

---

[29] Rec. Doc. 49, p. 14.

[30] *Id.*

[31] Renwick cites an exhibit to the deposition of Paul Barnes ("Barnes"), testifying on behalf of PB. Rec. Doc. 51-2, p. 4. In his memorandum in opposition to PNK's motion for summary judgment, Renwick cited Barnes's deposition testimony which references this exhibit, but did not cite the exhibit or attach it to his memorandum. *See* Rec. Doc. 32, pp. 2-4 (citing Exh. B, pp. 13-14). In its memorandum ruling, the court considered the testimony that Renwick cited. *See* Rec. Doc. 49, pp. 13-14.

[32] Rec. Doc. 51-2, p. 4 ("c").

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[34] Rec. Doc. 26-6, p. 50.

Fourth, Renwick argues that the court undertook a comparative negligence analysis when discussing whether PB had an obligation to provide proper tools for its employees.[35] Again, Renwick misinterprets the court's analysis and further does not cite to any particular passage in the Memorandum Ruling. Because Renwick refers to "operational control," the court will address this argument as it relates to that section of the Memorandum Ruling. As discussed in the court's Memorandum Ruling, generally a building owner is not liable for the negligent acts of its independent contractor.[36] An exception to this rule is if the building owner has operational control over the independent contractor's work.[37] Thus, the court's analysis of whether PNK had operational control, and its finding that PNK did not have operational control, addressed whether PNK owed a duty. Because the court found that PNK did not owe a duty, there could be no analysis of comparative negligence.

Fifth, Renwick claims the court gave weight to immaterial evidence regarding the usual equipment PB brings to jobs instead of who provided the ladder at the PNK job site.[38] This consideration was done under the analysis to determine if PNK had operational control,[39] and the court finds no error in its treatment of this issue.

Sixth, Renwick argues that the court improperly shifted the burden to Renwick to provide "absolute proof" that PNK knew of the ladders on the roof of the casino vessel.[40] Again, this was discussed in the court's analysis pertaining to operational control.[41] The factors that Renwick

---

[35] Rec. Doc. 51-2, p. 4 ("d").
[36] Rec. Doc. 49, p. 5
[37] *Id.* at 8.
[38] Rec. Doc. 51-2, pp. 4-5 ("e").
[39] Rec. Doc. 49, p. 11.
[40] Rec. Doc. 51-2, pp. 5-6 ("f").
[41] *See* Rec. Doc. 49, pp. 9-14.

7

argues demonstrate a genuine issue of material fact are either not pertinent to whether PNK had operational control over PB's work or were properly considered by the court.

Seventh, Renwick claims that the court improperly found that there was no evidence that PNK was aware that PB was using the roof access.[42] Renwick cites, in support, the previously uncited deposition testimony of Robert Gee, operations manager for PB, who stated that there was always somebody in the pilot house when PB was on the roof of the casino vessel.[43] Renwick further argues that PB was not allowed to access the roof elevator without PNK's permission but cites no evidence to support this assertion.

First, the court did not say that there was no evidence that PNK was aware that PB was using the roof access. The court said:

> The last factor that Renwick claims gave PNK operational control is that PNK employees had to grant PB employees access to the rooftop. Renwick does not cite to any information supporting this contention, but even if he had, "[t]he presence of a company man or representative, even one making inspections, is not sufficient to put the principal in operational control.[44]

The court was not considering, and the parties did not dispute, whether PNK knew that PB was using the point of access from the casino vessel rooftop to the hotel rooftop. Second, the court notes, again, that Renwick cites previously uncited testimony. However, even if the court considered this testimony, the court would refer again to the portion of the Memorandum Ruling, quoted *supra*, that states the presence of a company man is not sufficient to put a principal in operational control.

---

[42] Rec. Doc. 52-1, p. 6 ("g").

[43] Rec. Doc. 51-2, p. 6 (citing Rec. Doc. 26-11, pp. 20-21).

[44] Rec. Doc. 49, pp. 14-15 (quoting *Skinner v. Schlumberger Tech. Corp.*, No. 13-03146, 2015 WL 4253986, at *3 (W.D. La. 7/13/15) (citing *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)).

Finally, the eighth error Renwick argues is that the court improperly dismissed the significance of the photographs Renwick submitted which he purports is evidence that PNK knew PB employees were using the ladder in the photograph to access the vents on the roof of the hotel.[45] Renwick argues that PNK's possession of the work photographs gave PNK direct knowledge that the ladder was being used to access the hotel roof.[46] Renwick merely reargues his original position which the court has already addressed in its Memorandum Ruling.[47] However, Renwick further argues that the photographs, "in conjunction with the PNK surveillance videos of the PB employees who were granted rooftop access" creates a disputed question of fact.[48] Yet, while Renwick claims that there is video surveillance of the casino vessel rooftop,[49] he cites no evidence and the court has found no video surveillance submitted in the record.

On review, the court finds that it did not reach conclusions concerning disputed material facts. Therefore, Renwick has not established that the Judgment was based on manifest errors of law or fact as it relates to these issues.

### C. *Did the Court Fail to Interpret the Evidence in the Light Most Favorable to the Non-Moving Party?*

Renwick argues that the court did not interpret the evidence in the light most favorable to the non-moving party, Renwick.[50] First, Renwick contends that the court did not consider the "motives of the contractor or PB Technologies in not wishing to cast blame on PNK" and the fact

---

[45] Rec. Doc. 51-2, pp. 7-8.

[46] *Id.* at p. 8.

[47] *See* Rec. Doc. 49, pp. 15-16.

[48] *Id.*

[49] *Id.*

[50] *Id.* at pp. 8-9.

that PNK "made formal demand for indemnification on PB Technologies."[51] Although the court notes that Renwick cites testimony from a deposition attached to his memorandum in opposition to PNK's motion for summary judgment in support of this contention,[52] Renwick did not raise this argument nor did he cite the evidence within his brief opposing the motion for summary judgment. Again, it is not the court's duty to search the record for evidence and legal arguments to support a party's position.[53] Renwick again raises the issue of video surveillance purportedly showing Renwick's movements on the night of the accident, including riding an elevator with a PNK employee to the casino vessel rooftop, this time citing the deposition testimony of Paul Barnes.[54] Renwick argues that this "demonstrate[s] that PNK had control of the work operations, monitored the PB personnel within the [c]asino vessel, and knew that the PB personnel were performing work on the roof of the [c]asino vessel."[55] However, the cited testimony does not discuss video surveillance or Renwick's movements[56] nor do Renwick's arguments show operational control as set out in the Memorandum Ruling.[57]

Second, Renwick claims it was error for the court to state that Renwick had not provided evidence of operational control and lists a "litany of factors which in totality [Renwick contends] demonstrate operational control."[58] On review, the court finds that this list contains conclusions of

---

[51] *Id.* at p. 9 ("a").

[52] *Id.* (citing Rec. Doc. 32-4, pp. 44-45).

[53] *See Malacara*, 353 F.3d at 405 (citations omitted).

[54] Rec. Doc. 51-2, p. 9 (citing Rec. Doc. 26-5, p. 101).

[55] Rec. Doc. 51-2, p. 9.

[56] *See* Rec. Doc. 26-5, p. 101.

[57] *See* Rec. Doc. 49, p. 9.

[58] Rec. Doc. 51-2, p. 9-12 ("b").

fact unsupported by the cited evidence,[59] previously uncited evidence,[60] re-argumentation of Renwick's position,[61] and factors that do not lead to a finding of operational control.[62]

In the alternative, Renwick argues that even if these factors do not rise to the level of operational control, they "demonstrate a knowledge on PNK's part" that the ladder would be used, suggesting express or implied authorization to an unsafe practice.[63] Renwick argues that it is logical that if PNK set up a ladder in the precise place where a contractor needs to use it, that it is more likely than not that the contractor will use that equipment.[64] The court finds no error in its consideration of the evidence cited by the parties in determining that PNK did not give express or implied authorization to PB's use of defective ladders.[65]

Third, Renwick argues that the court should have considered his arguments regarding a "safer route" to reach the vents on the rooftop of the hotel under the "operational control" exception rather than the "inherently dangerous" exception to building owner liability.[66] Although not entirely clear, Renwick seems to be arguing that instructing PB on the access point to the hotel roof gave PNK operational control and that doing so constituted an express or implied authorization of an unsafe practice. Renwick claims this is relevant to a comparative fault analysis but not a duty/risk analysis.[67] Renwick cites no law in support of this argument, and the court finds

---

[59] *See e.g., id.* at p. 10 ("vi").

[60] *See e.g., id.* ("I," "iv," "vii") (citing Rec. Doc. 26-5, p. 155; Rec. Doc. 26-11, pp. 52-55).

[61] *See e.g., id.* ("ii," "iii")

[62] *See e.g., id.* ("I", "v," "vi")

[63] *Id.* at 11.

[64] *Id.*

[65] *See* Rec. Doc. 49, pp. 15-17.

[66] Rec. Doc. 52-1, p. 12 ("c").

[67] *Id.*

11

no error in its analysis of whether PNK was liable for the negligent acts of its independent contractor.[68]

Accordingly, Renwick has not established a manifest error of law or fact by the court failing to interpret the evidence in the light most favorable to the non-moving party.

### D. Strict Liability Analysis

Renwick contends it was legal error for the court to analyze the issue of "unreasonably dangerous" after it determined that there was a question of material fact as to whether PNK had *garde* of the ladder in relation to liability under Louisiana Civil Code art. 2317.1.[69] Renwick cites *Murray v. Ramada Inns, Inc.*, for the proposition that "the issue of comparative fault, i.e., failing to observe, should be totally divorced from the analysis of duty/risk.[70] However, the court did not undertake a comparative fault analysis. The court considered whether the risk was unreasonably dangerous, which was part of the analysis of whether PNK owed a duty to Renwick. In fact, the Louisiana Supreme Court, in the very case that Renwick cites, states:

> [T]his is not to say that a duty is owed or breached in all situations that involve injury. We have held, for example, that the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, *unreasonably* dangerous. However, the key to a finding of no liability in such cases is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-à-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody. The determination of what the plaintiff knew regarding the risk of injury is made after fault on the part of the defendant has been established, and is governed by the comparative fault principles enunciated in Louisiana Civil Code art. 2323.[71]

---

[68] *See* Rec. Doc. 49, pp. 9-14.

[69] Rec. Doc. 52-1, p. 13.

[70] *Id.* (citing 521 So.2d 1123 (La. 1988)).

[71] *Murray*, 521 So.2d at 1136 (internal citation omitted).

12

In its Memorandum Ruling, the court did not undertake an analysis of what Renwick knew regarding the risk of injury, but whether the risk was unreasonable considering his status as a repairman and the undisputed evidence presented as to whether the "condition of the ladder should have been observed by the plaintiff in the exercise of reasonable care or which was obvious."[72]

Renwick also alleges that the court placed "a burden of proof [instead of a burden of showing a question of material fact under Rule 56] with respect to the issue of open and obvious."[73] This is not so. As Renwick correctly quoted, the court stated: "Renwick does not point to evidence that such defects would not have been obvious upon inspection or that the risk of harm would have been unreasonable even had Renwick inspected the ladder prior to use as required by his employer's and OSHA's policies regarding safe use of ladders."[74] That is to say, PNK cited evidence showing that the risk of harm was not unreasonable and Renwick did not cite evidence disputing that. Pursuant to Federal Rule of Civil Procedure 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by…citing to particular parts of materials in the record, including depositions, documents," etc. Renwick did not support his assertion with appropriate citations in his opposition to the motion for summary judgment, and has not done so in the instant matter.

Finally, Renwick contends the court erred in holding that there was no evidence of PNK's obligation to provide a safe means of access under the "National Fire Protection Act [NFPA 96]."[75] Renwick contends that testimony as to PNK's obligation was given by "an expert hired by the

---

[72] Rec. Doc. 49, pp. 21-23 (quoting *Meaux v. Wendy's Int'l Inc.*, 51 So.3d 778, 791 (La.App. 5 Cir. 10/26/10)).
[73] *Id.* at p. 17.
[74] Rec. Doc. 49, p. 23.
[75] Rec. Doc. 52-1, p. 17.

13

defendant to perform the very cleaning services in question."[76] The testimony to which Renwick refers is that of Paul Barnes, PB's owner.

The court notes, first, that whether or not Paul Barnes was an expert on the NFPA 96 was not addressed by Renwick in his opposition to PNK's motion for summary judgment. Second, the court notes that the judge is the sole spokesman of the law.[77] "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[78] Thus, to the extent that Renwick contends the court should accept the legal conclusions of PNK's "expert," that is inappropriate. Third, as with his memorandum in opposition to PNK's motion for summary judgment, Renwick provides no authority as to the applicability of the NFPA 96 to PNK's L'Auberge property; does not provide the "code" language of the provisions he claims gives PNK a duty; does not attach the "code" for the court's review; and does not explain with proper legal and factual citation the connection between the code requirements and PNK's alleged obligations.[79] The court also has been unable to find evidence of a "National Fire Protection Act," but understands that "NFPA" stands for National Fire Protection Association. According to its website, the National Fire Protection Association is a "global nonprofit organization established in 1896, devoted to eliminating death, injury, property and economic loss due to fire, electrical and related hazards."[80] As previously mentioned, Renwick has not cited evidence that the NFPA 96 has been adopted by any governmental entity having authority over PNK's L'Auberge property, or that PNK would be liable under NFPA 96's provisions through some other means. Finally, the court also notes that Renwick implies that the court may not have

---

[76] *Id.* at p. 18 (citing Rec. Doc. 26-5, p. 99).

[77] *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997).

[78] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[79] *See* Rec. Doc. 51-2, pp. 18-19.

[80] NFPA Overview, National Fire Protection Association, http://www.nfpa.org/overview (last visited Sept. 6, 2017).

made this "error" if there were oral argument and more time to review this "voluminous motion" that was transferred on the "eve of trial."[81] The court reiterates that no motion for oral argument was made and further that Renwick's briefing deadline for the motion for summary judgment was not shortened or modified due to the reassignment of this case. As he did then, he fails to adequately argue this issue now such that it would raise a question of material fact for trial.

Accordingly, the court finds no manifest error of law or fact in its analysis of Renwick's claims under Louisiana Civil Code art. 2317.1, nor its treatment of Renwick's argument of liability under the NFPA 96.

## CONCLUSION

For the foregoing reasons, Renwick has not met his burden to show that the court made a manifest error of law or fact, nor that an amended judgment is necessary to prevent manifest injustice. Accordingly, Renwick's motion for a new trial, or in the alternative, to alter or amend judgment, (Rec. Doc. 51), will be **DENIED**.

**THUS DONE AND SIGNED** in Alexandria, Louisiana, this 11th day of September, 2017.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[81] Rec. Doc. 52-1, p. 17.